JUDGE SULLIVAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

SHELDON KRIEGEL and RUTH KRIEGEL,      :      07. CIV   8299
on Behalf of Themselves and All Others      :
Similarly Situated,      :

      :      **CLASS ACTION COMPLAINT**

                    Plaintiffs,      :

      :

          vs.      :      JURY TRIAL DEMANDED

BANK OF AMERICA CORPORATION and      :
BANK OF AMERICA, N.A.,      :

                    Defendants.      :

-----------------------------------------------------------x

RECEIVED
SEP 2 4 2007
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs, Sheldon Kriegel and Ruth Kriegel, jointly and on behalf of all others similarly

situated, by his attorneys, Schoengold Sporn Laitman & Lometti, P.C., for their class action

complaint allege as follows:

## I.

## INTRODUCTION

1.      It is alleged that Bank of America Corporation ("Bank Corp.") and Bank of

America, N.A. (collectively, the "Defendants" or "BAC" or the "Bank") engaged in a deceptive

scheme, in breach of fiduciary duties and contractual obligations, whereby the Bank purported to

offer and provide to Plaintiff and the Class – as holders of substantial Bank certificates of

deposits or time deposit accounts ("CDs") – "Premier" and "Plus" banking services when, in

fact, the opposite of such services were provided.  Specifically, the Bank took affirmative steps

to ensure that their "Premier" or "Plus" clients – reasonably relied on their Premier or Plus status

with the Bank in allowing BAC to *automatically renew* their CDs at maturity – received rates of

interest well *below* market rates and even below rates BAC offered to other BAC customers for

1

renewal of CDs of the same amount and term.

2.      For example, as of April 14, 2007 Plaintiffs held $337,701.33 in a nine-month "Risk Free CD" earning an Annual Percentage Yield ("APY") of *4.50%*. According to its terms, Plaintiffs' nine-month CD was due to mature on May 1, 2007. Shortly before the May 1, 2007 maturity date, Defendant Bank notified Plaintiff that the CD was coming due. Plaintiffs, as Premier clients, reasonably relied on the Bank to automatically renew the CD. After the May 1, 2007 maturity, Plaintiffs were sent a "CD Renewal/Receipt" form ("Renewal Document") already filled out by the Bank with Plaintiffs' personal information, including his name, address, social security number and account number. The form was sent by the Bank's *"Premier Relationship Center."* The Renewal Document renewed the nine month CD on May 1, 2007 at an interest rate of *2.62%* even though, this rate was well below the rate BAC offered its own customers for CDs of the same amount and term, who, for example, specifically inquired as to the applicable rates at the time of maturity. Indeed, the Bank's own "Consumer Deposit Interest Rates & Annual Percentage Yields" ("Rate Sheet"), effective May 17, 2007, provided that the nine-month "Risk Free CD" rate for certificates of deposit in the amounts of $100,000-$499,000 received interest of *3.40%*. Subsequent to the automatic renewal of the CD at *2.62%*, Plaintiff Sheldon Kriegel became aware of the artificially low renewal rate of interest and sought to terminate his account with the Bank. At the time Plaintiffs terminated their account, Dr. Sheldon Kriegel was advised by Bank representatives that had Plaintiffs inquired as to the applicable rates at the time of maturity and not relied on BAC automatic renewal system, they would have been offered a substantially higher rate of interest.

3.      Thus, the Bank engaged in, and continues to engage in, an egregious misleading

and deceptive practice designed to take advantage of its own "Premier" and "Plus" customers who rely on their purported special and trusted "Premier" and "Plus" fiduciary relationships with the Bank, allowing the Bank to *automatically* renew CDs and time deposit accounts, all the while unaware that the Bank does so at artificially low rates in order to enhance their own profits at the expense of their "Premier" and "Plus" clients. As defined on Bank of America's website, a CD is "a time deposit that is payable at the end of a specified term, [which] generally pay[s] a fixed interest rate and generally offer[s] a higher interest rate than other types of deposit accounts." The Bank then derives its benefit by lending Plaintiffs' and the other Class members' funds – for which it pays in inferior rate of interest to borrow – to other customers at substantially higher interests rates in the range of seven to nine percent. This practice constitutes a clear conflict of interest and violates statutory and common law.

4.    It is alleged that Defendants' misconduct violates the Investment Advisers Act of 1940 ("Investment Advisers Act"), 15 U.S.C. § 80b-1 *et seq.,* New York State General Business Law ("GBL") §349, which prohibits deceptive business practices, the New York Stock Exchange ("NYSE") and National Association of Securities Dealers ("NASD") rules and regulations, and constitutes common law fraud, breach of contract, breach of fiduciary duty, negligence, unjust enrichment, and negligent misrepresentation.

5.    Plaintiffs bring this action on behalf of themselves and all other similarly situated "Premier" and "Plus" banking clients whose certificates of deposit or time deposit accounts were automatically *renewed* upon maturity, at interest rates *below* the rate the Bank was offering customers for CDs of the same amount and term. Plaintiffs' allegations are based upon knowledge as to themselves and upon information and belief based upon, among other things,

3

the investigation of their attorneys, including a review of Defendants' public documents, filings

with the United States Securities and Exchange Commission ("SEC"), applicable statutes, rules

and regulations, communications by Defendants, and news articles and information readily

obtainable on the Internet.

II.

## JURISDICTION AND VENUE

6.     The claims asserted herein involve violations of Investment Advisers Act of 1940,

15 U.S.C. § 80-b-1 *et seq.*, the New York General Business Law §349, which prohibits

misleading and deceptive acts and practices, the New York Stock Exchange ("NYSE") and

National Association of Securities Dealers ("NASD") rules and regulations, common law

breaches of contract and fiduciary duty, fraud, negligence, unjust enrichment and negligent

misrepresentation.

7.     This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1332(d) (diversity).  Although Plaintiffs are citizens of Massachusetts, other members

of the proposed Class, numbering thousands, are citizens of states different from any of the

Defendants. *See* 28 U.S.C. § 1332(d)(2)(A).  Additionally, the matter in controversy exceeds the

sum of $5,000,000, exclusive of interests and costs.  Separately, this Court has jurisdiction over

the subject matter of this action pursuant to 28 U.S.C. § 1331, as one of the causes of action

arose from Defendants' violation of federal law, *i.e.*, the Investment Advisers Act, 15 U.S.C.

80b-14.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).  Defendants

maintain a substantial presence in this district.  Defendants have numerous offices throughout

this District and at least 18 banking centers in Manhattan, alone.  Defendant Bank Corp.'s

subsidiary Banc of America Securities, LLC is headquartered in this District at 9 West 57th

Street, New York, New York 10019.  Further, Defendant Bank Corp. is currently building a $1

billion skyscraper, expected to be completed in 2009, which will serve as the headquarters for

Defendant Bank Corp.'s New York operations, as well as the headquarters for Defendant Bank

Corp.'s investment banking operations, and host most of Defendant Bank Corp.'s New York-

based employees.  Many of the acts and transactions alleged herein, including the deceptive acts

and practices and the dissemination of materially false and misleading documents and

disclosures, occurred in this District.  Each Defendant resides in, is found, transacts business, or

has an agent in this District.  Further, venue is proper in this District pursuant to 15 U.S.C. § 80b-

14.

## III.

## PARTIES

9.      Plaintiffs Sheldon Kriegel and Ruth Kriegel reside in the State of Massachusetts,

County of Norfolk.  Plaintiffs originally entered into a banking relationship with FleetBoston

Financial, which later merged with and into Bank Corp.  The Bank classifies Plaintiffs as

"Premier Banking Clients" and "Plus Customers" entitled to "Advantages" and privileges,

including bonuses and higher rates.  Effective May 1, 2007, the Bank automatically rolled over

Plaintiffs' time deposit account into a 9-month CD earning interest of 2.62%, while at the same

time the market, in general and, indeed, the Bank itself, were offering substantially higher rates

for CDs of the same amount and term.

10.     Defendant Bank of America Corporation ("Bank Corp.") is a corporation

5

organized under the laws of the State of Delaware, with its principal executive headquarters located at 100 North Tryon Street, Charlotte, North Carolina 28255. Bank Corp. is a bank holding company and a financial services holding company. It operates banks through its banking subsidiaries, including Bank of America, N.A. Effective April 1, 2004, Fleet Bank merged into Bank Corp. increasing defendants' customer bank and geographic market. Bank Corp. claims in its public statements, including in its 2006 annual report and on its website, to be one of the world's largest financial institutions.     Bank Corp., through its subsidiaries, offers banking, investing, asset management and other financial and risk-management products and services. Bank Corp. controlled and directed the actions of Bank of America, N.A. and was also a principal financial beneficiary from the profits obtained from the execution of the deceptive scheme described herein. Bank Corp. is a member of the NYSE and the NASD.

11.     Defendant Bank of America, N.A. is a nationally chartered bank with its principal executive offices located at 101 South Tyron Street, Charlotte, North Carolina. Bank of America, N.A. has numerous banking centers and sales offices in this District and at least eighteen banking centers in Manhattan, alone. According to "Call Reports" filed with the Federal Deposit Insurance Corporation, more than $173 billion of customer time deposits were maintained domestically at Bank of America, N.A. as of March 31, 2007, of which more than $101 billion had a maturity of more than 30 days.

## IV.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

12.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class, consisting of all Premier Bank holders whose

Certificate of Deposit or time deposit account was automatically renewed by the Bank at a rate and annual percentage yield ("APY") that was less than the interest rate it offered to other Bank customers at the time for the same CD amount and term, since on or about April 1, 2004 up to the present (the "Class Period").  Excluded from the Class are Defendants, their officers and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which the Defendants have or had a controlling interest.  The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believes that there are many thousands of Class members.  Class members may be identified from records maintained by Defendants.

13.     Plaintiffs' claims are typical of the claims of the Class, as all Class members were and are similarly affected by Defendants' wrongful conduct in violating state consumer protection statutes and the common laws that are complained of herein.  Plaintiffs and each of the Class members entered into uniform contracts to open a bank account, including a certificate of deposit, and received uniform disclosures.  Defendants' deceptive practices, misrepresentations, omissions, and concealed facts, were uniformly directed to the Class by Defendants.  Plaintiffs and the other Class members have sustained monetary damages resulting from Defendants' deceitful and improper practices.

14.     Plaintiffs will fairly and adequately represent and protect the interests of the other Class members and have retained counsel competent and experienced in class action litigation.

15.     Common questions of law and fact exist as to all Class members and predominate

over any questions solely affecting individual Class members. Among the questions of law and fact common to the Class are:

(a)    whether Defendants violated the Investment Advisers Act of 1940 ("Investment Advisers Act"), 15 U.S.C. § 80b-1 *et seq.,* through their deceitful and improper conduct as alleged herein;

(b)    whether Defendants violated New York General Business Law § 349 through their deceitful and improper conduct as alleged herein;

(c)    whether Defendants violated the NYSE and NASD rules and regulations through the improper conduct alleged herein;

(d)    whether Defendants breached their fiduciary duties, and engaged in prohibited self-dealing and undisclosed conflicts of interest by failing to disclose adequately their conflicts of interest or the alternatives available to the customers and by automatically renewing CDs at low interest rates;

(e)    whether Defendants' disclosures to Plaintiffs and other members of the Class members in account agreements, account statements, mailings, web pages, brochures, bank displays, bank boards, advertisements, and other uniform disclosures during the Class Period, were materially false and misleading, including that customers could have obtained higher rates through other investments alternatives, and the CDs into which Defendants placed customers' money were more profitable to Defendants but not to the customers,

(f)    whether Defendants had a duty to disclose material facts, such as the special meaning of terms used in disclosures regarding rate offered upon renewal of CDs, or the need to call in and specifically request a better rate to avoid obtaining a lower rate upon

automatic renewal of a certificate of deposit;

(g)     whether Defendants' conduct complained of herein constituted negligent misrepresentation, fraud, or deceit;

(h)     whether Defendants breached their contracts with customers, including the implied covenant of good faith and fair dealing;

(i)     whether Plaintiffs and Class members suffered damages, and to what extent;

(j)     whether Defendants were unjustly enriched by their misconduct and violations of law;

(k)     to what extent Defendants were unjustly benefited by and should be held to account for their wrongful conduct;

(l)     whether Defendants' contracts with Plaintiffs and other members of the Class should be rescinded or voided; and

(m)     should Defendants be directed to disgorge profits.

16.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  As the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

17.     Each of the Class members maintains or maintained a certificate of deposit or time deposit account with the Bank, has or had a "Premier" or "Plus" relationship with

9

Defendants, and had the certificate of deposit or time deposit was renewed by the Bank at less than best available rate then-offered by the Bank.

V.

## SUBSTANTIVE ALLEGATIONS

**A.    Background**

18.    Prior to the Fleet Bank merger with Bank Corp., effective April 1, 2004, Plaintiffs maintained an account at Fleet Bank. Plaintiffs' Fleet Bank account held a CD. Post-merger, Plaintiffs' Fleet Bank account was subsumed by the newly-combined entity – *i.e.*, Bank Corp. Defendants have inundated the consumer market with representations regarding its trusted fiduciary role in relationship with its customers particularly with respect to its "Premier or Plus" customers and their investments in products such as CDs.

19.    Touting their "Code of Ethics", the website emphasized the Defendants' reliability and ethical conduct, stating: "At Bank of America, we are committed to upholding the highest standards of corporate governance and ethical conduct in all we do."

20.    Describing the Code of Ethics, Defendants, on their website, promoted its trustworthiness, stating:

> The Bank of America Code of Ethics and General Policy on Insider Trading for all Bank of America associates and directors puts into writing the highest standards of ethical conduct to which we all must hold ourselves, and one another, accountable.
>
> ***Trust is the foundation on which we build strong relationships with our customers,*** our shareholders, our communities and one another, and it is trust that enables us to achieve our goals. The responsibility for creating and sustaining trust in Bank of America rests squarely on each of us and the personal integrity we bring to our work.
>
> Our Code of Ethics provides guidance and direction on our ethical standards. Our General Policy on Insider Trading provides guidance on how to conduct personal

10

securities transactions.  Taken together, these documents explain what we mean when we say *one of our core values is "doing the right thing."*  Each of us is required to acknowledge our responsibility for reading, understanding and complying with the guidelines in these documents. If you have any questions, talk with your manager.

We all recognize that results are important. But these documents underscore our individual and collective recognition and acceptance that how we get results is just as important.  To preserve the trust others place in us - and our trust in each other - I am counting on you to uphold the highest professional and ethical standards in all that you do. In living up to this commitment, I look forward to all we will accomplish together.

(Emphasis added).

21.    Defendants held themselves out as "financial advisors" to customers engaged in what Defendants classified as a *"Premier"* banking relationship.  In an "Investments & Wealth Management'" section on their website, Defendants stated that a Premier account provides:

**Wealth Management**

Premier Banking & Investments™

Your dedicated Premier Banking & Investments team works together on your behalf. *Through them, you can easily access tailored banking and investment solutions and thoughtful guidance to address your financial challenges and opportunities.*

(Emphasis added).

22.    Further, the "Premier Banking & Investments" title links a user of Defendants' web page to a separate section of the site which assured Premier clients that Bank of America would work with the customer to provide "comprehensive" financial strategies" to "help you manage your financial life and pursue your goals:

**Introducing Premier Banking & Investments**
Premier Banking & Investments brings together personalized banking and investment expertise on one team dedicated to you.  A Premier Banking Client Manager and a Banc of America Investment Services, Inc., Financial Advisor *work directly with you to provide comprehensive financial strategies and*

11

*customized banking and investment solutions to help you manage your financial life and pursue your goals.*
You will receive priority service, have access to specialized product solutions, and be recognized as a valued client throughout the Bank of America family.

**Financial Strategies**

A dedicated financial team committed to providing you *with comprehensive financial strategies* and *access to customized credit, deposit and investment solutions from Bank of America and Banc of America Investment Services, Inc.*

(Emphasis added).

23.    Defendants emphasized the loyal advisory relationship they offered to Premier customers in a third section of their web page titled "Financial Strategies", and promised disclosure of the investment options available in order to maximize a client's wealth, stating:

**Financial Strategies**
*Helping you build and manage your wealth.*

**In-depth guidance and solutions**

A Dedicated Financial Team: a Premier Banking Client Manager and a Banc of America Investment Services, Inc. Financial Advisor work closely with you to understand your needs. *They provide guidance and customized investment, deposit and credit solutions utilizing the full scope of our company's expert resources and our broad spectrum of investment and banking products.* Your Financial Advisor from Banc of America Investment Services, Inc. will focus on investments and *your Client Manager from Bank of America will coordinate the credit and cash management portion of your portfolio.*

You get access to expertise in financial services from Bank of America and its affiliates for a wide range of needs, including:

*    *    *

- *Cash flow and debt management*
- Credit and financing
- Retirement strategies
- Education strategies
- Insurance strategies
- Wealth transfer and estate planning
- Goal planning

24.     The "Financial Strategies" section of the web page also described a "four-step" process, available to the Bank's Premier clients, which assured Defendants' focus on "your needs and goals":

**A disciplined wealth management process**

Working with a Client Manager and a Financial Advisor, you are guided through a thoughtful, four-step consultative process to design and implement your financial strategy.

*     *     *

**4.      Ongoing reviews and monitoring.** *Your Financial Advisor then assists you in tracking, researching and evaluating your investments to ensure that your overall financial strategy remains focused on your needs and goals.*

(Emphasis added.)

25.     Furthermore, on their web site, Defendants represented that the benefits of a Premier relationship extended to better rates and privileges, including "preferred rates" on certificates of deposit, as well as lower fees on various services.

26.     Defendants marketed and promoted the beneficial features of their certificates of deposit to Premier clients on their website – touting stable, continuous returns and convenient automatic renewal without necessary intervention to secure the best available rate – stating:

Certificates of Deposit

Enjoy *stable* returns on your account and the peace of mind that comes with Federal Deposit Insurance Corporation (FDIC) insurance

Account features

- Maturity dates anywhere from 7 days to 10 years
- Earn preferred rates when you also have an Advantage checking account
- Access to your account information through online Banking or Telephone Banking

- *Most CD s automatically renew at maturity.*

(Emphasis added.)

**B.    Defendants' Automatically Renewed Plaintiffs' CD
At A Rate Below Their Stated Interest Rate**

27.    Plaintiffs were induced to maintain their account with BAC by its representations that they would become "Premier" or "Plus" banking clients entitling them to special privileges, including higher rates on banking instruments, such as Certificates of Deposit, and better services. All of Plaintiffs' monthly bank statements boldly stated that Plaintiffs were "*Premier Banking Clients.*" Moreover, the periodic bank statements sent to Plaintiffs were referred to as "*Advantage Statements.*"

28.    Plaintiffs' Advantage Statement for the period ending April 19, 2007 provided that the interest rate on Plaintiffs' "Risk-Free" Certificate of Deposit was 4.41% and the APY was *4.50%*. This statement made no mention of any change in interest rate or APY upon renewal of a nine-month "Risk-free" certificate of deposit.

29.    Shortly before the May 1, 2007 maturity date, Defendants notified Plaintiffs that the CD as coming due. Plaintiffs relied on the Bank to automatically renew the CD. After the May 1, 2007 maturity, Plaintiffs were sent a "CD Renewal/Reinvestment Receipt" ("Renewal Document") informing Plaintiffs that their nine-month CD with an APY of 4.5% and in the amount of $338,925.08, had been automatically renewed on May 1, 2007 at an interest rate of *2.62%*. The Renewal Document was sent by BAC's "*Premier Relationship Center.*" This rate was *less* than the renewal rate published by the bank applicable to the same period for a nine-month Risk-Free CD in the Rate Sheet available on Defendants' website (3.35%); was *less* than

14

the standard CD rate available by the Bank for a CD of equivalent dollar amount at the time (3.74%, or an APR of 3.80%); and, was *less* than the "promotional" rate offered by the Bank for an equivalent dollar amount of 4.89% for eleven-months (APR of 5.00%).

30.    Defendants never disclosed to Plaintiffs or the Class that by not contacting Defendants prior to the date of maturity the Bank would automatically renew Plaintiffs' CD at a substantially lower rate of interest than what was being provided to Bank customers who inquired as to the best available rate.  Moreover, Plaintiffs were not sent the Bank's Rate Sheet with the Renewal Document which reflected that in May 2007 the Bank was providing "Risk Free 9-month CDs" in the amount of $350,000 well above 2.52%.

31.    Relying on their Premier Relationship and the fact that Bank would renew the nine-month CD at the highest rate being offered by the Bank to Premier clients on the identical instrument, and having no cause to think otherwise, Plaintiffs allowed the Bank to renew or roll over the CD.  Shortly, thereafter Plaintiff, Dr. Sheldon Kriegel, inquired as to the rates at which their CD had been renewed at and was advised by a Bank representative that had he inquired as to the applicable rates at the time of maturity and not relied upon the automatic renewal system, he would have been offered a substantially higher rate of interest.  Immediately thereafter, Plaintiffs terminated their account with the Bank.

C.    **Defendants' Deceptive CD Renewal Program Violated NYSE and NASD Rules**

32.    Defendants' false and misleading disclosures set forth at ¶¶ 19-29, *infra*, violated fundamental NYSE rules governing member firms' conduct and disclosures.  NYSE Rule 401(a), Business Conduct, states: "every member, allied member and member organization shall at all times adhere to *the principles of good business practice in the conduct of his or its business*

*affairs.*" (Emphasis added). Likewise, NASD Rule 2110, Standard of Commercial Honor and Principles of Trade, requires that "A member, in the conduct of its business, shall observe high standards of commercial honor and just and equitable principles of trade." NYSE Rule 405, "Diligence as to Account" (commonly referred to as the "Know Thy Customer" Rule), requires that "every member organization is required ... to (1) *Use due diligence to learn the essential facts relative to every customer*, every order, every cash or margin account ...." (Emphasis added). In addition, NYSE Rule 342.17, "Review of communications with the public," states: "Members and member organizations must develop written policies and procedures that are appropriate for their business, their size, structure and customers in connection with the review of communications with the public relating to their business." Further, NYSE Rule 472, Communications With The Public, sub-section (i) "General Standards for All Communications," states, in pertinent part: *"No member organization shall utilize any communication which contains (i) any untrue statement or omission of a material fact or is otherwise false or misleading, ..."* and sub-section (j), "Specific Standards for Recommendations," states in part that "[a] recommendation (even though not labeled as a recommendation) must have a basis which can be substantiated as reasonable." Similarly, NASD Rule 2210(d)(1)(A), "Communications with the Public," states: "communications with the public shall be based on principles of fair dealing and good faith ... and must provide a sound basis for evaluating the facts ...." And, pursuant to NYSE Rule 476 (Disciplinary Proceedings), "conduct or proceeding inconsistent with just and equitable principles of trade" is sanctionable by "fine, censure, suspension or bar from being associated with any member or member organization, or any other fitting sanction."

16

## FIRST CLAIM

### Violation of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-1 et seq.

33.     Plaintiffs repeat and reallege the allegations as set forth above as if set forth fully herein.

34.     The Bank is an investment adviser under the Investment Advisers Act, 15 U.S.C. § 80b-1 *et seq.*, who entered into express and/or implied contracts with Plaintiffs and the other Class members. Defendants, for compensation, engage in the business of advising Plaintiffs and the other Class members, either directly or through publications or writings, as to the value of "securities" or as to the advisability of investing in, purchasing, or selling "securities" as defined at 15 U.S.C. § 80b-2(11).

35.     The provision of certificates of deposit or time deposit accounts – i.e., CDs – is not incidental to the conduct of their business and Defendants receives special compensation therefore. This compensation includes but is not limited to the difference between the interest the Bank pays to Plaintiffs and other Class members on their CDs and the amount of interest the Bank can earn from its investing and lending activities.

36.     Under the Investment Advisers Act, the Bank, as an Investment Adviser, owed to Plaintiffs and the other Class members a fiduciary duty to fully and fairly disclose to all conflicts of interest and all material facts, and an affirmative obligation to employ reasonable care to avoid misleading clients.

37.     In breach of its fiduciary duties to Plaintiffs and the other Class members in violation of the Investment Adviser Act, the Bank made the above-described misrepresentations, concealment and omissions of material facts concerning its program whereby Plaintiff and the

other Class members CDs were automatically renewed at rates far below their maturing CDs and below the then prevailing market rate of interest on CDs of the same maturity, thereby deceiving Plaintiff and other Class members with full knowledge that they were falsely and misleadingly representing to customers that their CDs were being automatically reinvested, when the Bank was reinvesting Plaintiffs' and the other Class members' cash was below market rates, enabling the Bank to profit at their customers' expense.

38.    As a result of Defendants' fiduciary duty breaches, the Bank's agreements with Plaintiffs and other Class members of the Class are void under Section 15 of the Investment Advisers Act, 15 U.S.C. § 80b-15(b), which provides:

> Every contract made in violation of any provision of this title and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this title, or any rule, regulation, or order thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, regulation, or order, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision.

39.    Defendant Bank Corp. acquired rights under and was benefited by the Bank's automatic CD renewal agreements and had actual knowledge of the conduct engaged in by the Bank that made those agreements in violation of the Investment Advisers Act.

40.    In addition to seeking a declaratory judgment that the sweep account agreements with the Class are void, Plaintiff seeks an accounting and restitution on behalf of the Class of all monies and fees wrongfully obtained by Defendants pursuant to the wrongful conduct set forth above, and disgorgement of all profits made by the Defendants due to their conduct in violation

of the Investment Advisers Act.

## SECOND CLAIM

### Violation of the New York General Business Law § 349

41.     Plaintiffs repeat and reallege the allegations as set forth above as if set forth fully herein.

42.     Section 349 of the New York's General Business Law states:

Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

43.     Defendants' deceptive acts, practices, and the false representations and omissions made by Defendants to Plaintiffs and the other Class members concerning their certificates of deposit and time deposit accounts, were made in the course of conducting their business, trade and services in New York. Defendants' misrepresentations and omissions were likely to mislead reasonable consumers acting reasonably under the circumstances.

44.     Defendants' conduct and actions, as described above, constitute deceptive business practices in violation of the GBL.

45.     The damages sustained by Plaintiffs and the other Class members were a direct and foreseeable result of, and were proximately caused by Defendants' deceptive business practices.

46.     As a result of Defendants' actions, Plaintiffs and the other Class members have been injured and damaged in an amount to be determined at trial.

## THIRD CLAIM

### Common Law Fraud

47.     Plaintiffs repeat and reallege the allegations as set forth above as if set forth fully herein.

48.     The above described conduct and actions constitute common law fraud.

49.     Defendants misrepresented, concealed and omitted material facts to Plaintiffs and other Class members.

50.     Defendants had a duty to make accurate and complete statements, and to disclose material facts, to Plaintiffs and the other Class members.  Defendants were subject to the Massachusetts Consumer Protection Act, had contracts which implied a covenant of good faith and fair dealing, and had fiduciary duties to bank depositors of loyalty, due care, and to disclose conflicts of interest.  Furthermore, Defendants held themselves out as "financial advisors" to customers, portrayed themselves as trustworthy, ethical, and reliable, and encouraged Plaintiffs and the other Class members to rely upon them to manage their monies and deposits. Defendants engaged in their false and deceptive scheme, and made false and misleading statements, with full knowledge and/or reckless disregard that of their falsity.

51.     Defendants intended the Plaintiffs and the other Class members to rely upon the above-described misrepresentations, concealment and omissions.

52.     Defendants' misrepresentations, omissions, and concealments were material to Plaintiffs' and other Class members' in deciding to open, maintain, and renew bank accounts, including time deposits and CDs, with the Bank.

53.     Plaintiffs    and    other    Class    members    justifiably    relied    upon    such

20

misrepresentations, concealments and omissions to their damage and detriment.

54.    The damages sustained by Plaintiffs and the other Class members were a direct and foreseeable result of, and were proximately caused by, Defendants' misrepresentations, concealment and omissions.

55.    As a result of Defendants' actions, Plaintiffs and the other Class members have been damaged and injured in an amount to be determined at trial.

56.    Defendants' conduct was outrageous, willful and wanton, with a reckless indifference to the rights of others. Based on the intentionally dishonest nature of Defendants' conduct, which was directed at the Class and at the public generally, Defendants should also be held liable to the Class for punitive damages in an amount to be determined at trial.

<h2 style="text-align:center">FOURTH CLAIM</h2>

<h3 style="text-align:center">Breach of Contract<br>(against Bank of America, N.A.)</h3>

57.    Plaintiffs repeat and reiterate the allegations set forth above as though fully set forth herein.

58.    Plaintiffs and the other Class members, either expressly contracted with the Bank to deposit funds with the Bank under the CD program.  The contracts entered into by Plaintiffs and the other Class members expressly provided that upon the maturation of the CDs, the Bank would automatically renewed the expired CD with another CD of the same maturity at the market rate of interest.

59.    Plaintiffs and the other Class members tendered their cash to Defendants in consideration of the aforementioned agreement, with full expectation that upon maturity of their

CDs their funds would be automatically reinvested in another CD of the same maturity at the market rate of interest.

60.    As alleged above, in breach of their express contracts with Plaintiffs and the other Class members, the Bank took affirmative steps to automatically renew Plaintiffs and the other Class members CDs at rates *far below their maturing CDs and below the market rate of interest on same-maturation CDs*.

61.    By renewing certificates of deposit at substantially below Bank-offered and market rates the Bank breached its contracts with Plaintiffs and the other Class members.

62.    As a direct, foreseeable, and proximate result of Defendants' aforesaid misconduct, Plaintiffs and the other Class members sustained substantial damages, in an amount to be determined at trial.

63.    Bank of America, N.A.'s conduct was conduct was outrageous, willful and wanton, with a reckless indifference to the rights of others. Based on the intentionally dishonest nature of Bank of America, N.A.'s conduct, which was directed at the Class and at the public in general, Defendants should also be held liable to the Class for punitive damages in an amount to be determined at trial.

### FIFTH CLAIM

### Breach of an Implied Covenant of Good Faith and Fair Dealing

64.    Plaintiffs repeat and reiterate the allegations set forth above as though fully set forth herein.

65.    Implied in every contract, including the bank deposit agreements between the Defendant Bank and Plaintiffs and the Class members, is a covenant of good faith and fair

dealing.

66.    Bank of America, N.A. had an obligation to make full and complete representations about their conflicts of interest, the range of rates available on time deposits, including the best available rate, and the meaning of terms such as "standard" and "promotional" rates as used by Defendants. Bank of America, N.A. also had a duty not to appropriate Plaintiffs' and the other Class members' funds to unjustly enrich themselves and their affiliates at the expense of Plaintiffs and the Class.

67.    By renewing certificates of deposit at substantially below Bank-offered and market rates, by making the misrepresentations and omissions set forth herein, and by unilaterally using "negative consent" to select the renewal rate, to the Defendants' advantage and to the detriments of their customers, Bank of America, N.A. breached its contracts with Plaintiffs and the other Class members, including their implied covenant of good faith and fair dealing.

68.    As a direct, foreseeable, and proximate result of Defendants' aforesaid misconduct, Plaintiffs and the other Class members sustained substantial damages, in an amount to be determined at trial.

69.    Bank of America, N.A.'s conduct was conduct was outrageous, willful and wanton, with a reckless indifference to the rights of others. Based on the intentionally dishonest nature of Bank of America, N.A.'s conduct, which was directed at the Class and at the public in general, Defendants should also be held liable to the Class for punitive damages in an amount to be determined at trial.

23

## SIXTH CLAIM

### Breach of Fiduciary Duty

70.     Plaintiffs repeat and reallege the allegations as set forth above as if set forth fully herein.

71.     Defendants owed Plaintiffs and the other Class members fiduciary duties, including duties of good faith, loyalty, due care, and fairness.  Plaintiffs and the other Class members reposed their trust and confidence in the Defendants to renew their CDs on favorable terms, and the Defendants accepted that trust and confidence in renewing CDs on Plaintiffs' and the other Class members' behalf.  As a bank which held deposits of Plaintiffs and the other Class members, Defendants owed Plaintiffs and the other Class members the fiduciary duties to make full and accurate disclosures of material facts, including those which might reasonably affect Plaintiffs' and the other Class members' investment decisions, such as any conflict of interest or benefit the Defendants received in transactions involving clients.

72.     In breach of their fiduciary duties to Plaintiffs and other Class members, the Defendants made the above-described misrepresentations, concealment and omissions of material facts, and renewed Plaintiffs' and other Class members' Certificates of Deposit at interest rates that were substantially below-market and below rates that were offered by Defendants.  Defendants acted with full knowledge that their statements were materially incomplete, false and misleading and that the customers' certificates of deposit were being renewed at less than available rate, to increase Defendants' profits at the customers' expense.

73.     The damages sustained by Plaintiffs and the other Class members were a direct and foreseeable result, and were proximately caused by, Defendants' breaches of their fiduciary

duties.

74.    As a result of the Defendants' actions, Plaintiffs and the other Class members have been damaged and injured, and the Defendants have been unjustly benefited, in an amount to be determined at trial.

75.    Defendants' conduct was outrageous, willful and wanton, with a reckless indifference to the rights of others. Based on the intentionally dishonest nature of Defendants' conduct, which was directed at the Class and at the public generally, Defendants should also be held liable to the Class for punitive damages in an amount to be determined at trial.

## SEVENTH CLAIM

### Negligence

76.    Plaintiffs repeat and reiterate the allegations as set forth above as if set forth fully herein.

77.    Defendants owed to Plaintiffs and the other Class members a duty of care concerning monies on deposit, and advice and information given by Defendants regarding available rates and alternatives.

78.    Defendants breached their duty of care by renewing certificates of deposit of Plaintiffs and the other Class members at substantially rates that were below those available at the Bank and market, by making the misrepresentations and omissions set forth herein, by unilaterally using "negative consent" to select rates on renewed deposits, and by promoting their own advantage to the detriment of its clients.

79.    The damages suffered by Plaintiffs and the other Class members were a direct and foreseeable result of, and were proximately caused by, Defendants' breaches of its duty and

negligent conduct.

80.     As a result of the Defendants' actions, Plaintiffs and the other Class members have been damaged and injured, in an amount to be determined at trial

## EIGHTH CLAIM

### Unjust Enrichment

81.     Plaintiffs repeat and reallege the allegations as set forth above as if set forth fully herein.

82.     Plaintiffs and the other Class members entered into contracts with the Bank to open, maintain, and renew accounts, including time deposits.

83.     Throughout the Class Period, the Defendants, by arranging to put the customers' cash into low interest paying deposit accounts at Bank of America, N.A., in breach of contractual obligations and fiduciary duties, and as part of a deceptive scheme, generated higher profits.

84.     Defendants have been unjustly enriched at the expense of and to the detriment of Plaintiffs and each member of the Class by collecting money to which they are not entitled. Specifically, by retaining and reinvesting the customers' cash at higher rates while paying the customers the lowest rates, Defendants used the investors' funds for the profit of themselves and their affiliates, and thus yielded enormous ill-gotten profits.

85.     Defendants should be required to disgorge this unjust enrichment.

## NINTH CLAIM

### Negligent Misrepresentation

86.     Plaintiffs repeat and reallege the allegations as set forth above as if set forth fully herein.

26

87.     Defendants made the above-described misrepresentations, concealment and omissions of material facts to Plaintiffs and the other Class members.

88.     As described above, Defendants owed to Plaintiffs and the other Class members duties of disclosure, fair dealing, loyalty and good faith.

89.     Defendants breached their duties to Plaintiffs and the other Class members.

90.     Defendants were negligent in making the above-described misrepresentations, concealment and omissions of material facts.

91.     Defendants' misrepresentations and omissions were material to Plaintiffs' and the other Class members' decisions to open, maintain, and renew time deposit accounts with Defendants.

92.     Plaintiffs and the other Class members justifiably relied upon such misrepresentations, concealment and omissions, to their damage and detriment.

93.     The damages sustained by Plaintiffs and the other Class members were a direct and foreseeable result of, and were proximately caused by, Defendants' misrepresentations, concealment and omissions.

94.     As a result of Defendants' actions, Plaintiffs and the other Class members have been damaged and injured, in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs pray for relief and judgment, as follows:

(a)     Determining that this action is a proper class action, and certifying Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory and punitive damages in favor of Plaintiffs and the other Class members against Defendants for all damages sustained as a result of

27

Defendants' wrongdoing, in an amount to be determined at trial, including pre- and post-judgment interest thereon;

(c)     Requiring Defendants to account for and/or pay in damages to Plaintiffs and the other Class members the amounts by which Defendants benefited due to Defendants' wrongful conduct;

(d)     Deeming monies obtained through the Defendants' fraudulent, unfair, and unconscionable conduct, in breach of their duties, which caused Defendants to be unjustly enriched at the expense of the Plaintiffs and the other Class members, to be held in constructive trust for the Plaintiffs and the Class members;

(e)     Entering a Declaratory Judgment that Defendants' agreements with Plaintiffs and the other Class members are void, and awarding equitable relief, including rescission, restitution and disgorgement of all monies and profits obtained by Defendants pursuant to or as a result of the those agreements;

(f)     Awarding Plaintiffs and the other Class members their reasonable costs and expenses incurred in this action, including counsel fees and costs, and expert fees and costs; and

(g)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: New York, New York
       September 24, 2007

SCHOENGOLD SPORN LAITMAN &
LOMETTI, P.C.

_____
Samuel P. Sporn (SS-4444)
Joel P. Laitman (JL-8177)
Frank R. Schirripa (FS-1960)
Daniel B. Rehns (DR-5506)
19 Fulton Street, Suite 406
New York, NY 10038
Tel: (212) 964-0046
Fax: (212) 267-8137

*Counsel for Plaintiffs and Proposed Putative Class*

29